UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

NICHOLAS ADENEKAN and JOELYN ALVES,

                        Plaintiffs                         COMPLAINT

                  -against-                                Jury Trial Demanded

THE CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, DETECTIVE NICOLE SANFILIPPO
JOHN DOE 1-5

                       Defendants
------------------------------------------------------------------------X

Plaintiffs Nicholas Adenekan and Joelyn Alves by their attorney Dave Law PC as and for their complaint allege as follows:

PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiffs seeks relief for the violation of their rights secured by 42 USC §1983, §1988, the Fourth and Fourteenth Amendments to the United States Constitution.

2. The claims arise from a June 18, 2020 incident in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiff to, inter alia, intimidation, harassment, racial targeting, and unwanted seizure of their motor vehicle by presenting false evidence, false information, perjury and racial profiling,.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

JURISDICTION

4. This action is brought pursuant to 28 USC §1331, 42 USC §1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

5. The amount in controversy exceeds $75,000.00 excluding interest and costs.

## VENUE

6. Venue is laid within the United States District Court for the Eastern District of New York in that Defendant City of New York is located within, and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District of New York.

## PARTIES

7. Plaintiffs Nicholas Adenekan and Joelyn Alves are legal residents of the United States and at all times here relevant, reside in Richmond County, City and State of New York.

8. The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York and do not use their stature and status as law enforcement to racially profile, target and engage in perjurious and illegal behaviour.

9. Detective Louise Sanfilippo was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Detective Sanfilippo was the officer that violated plaintiffs constitutional rights and was under the command of the 122nd Precinct of the NYPD. Defendant Sanfilippo is sued in her individual capacity.

10. All other individual defendants ("the officers"), including John Doe #1-5, individuals whose names are currently unknown to plaintiff, are employees of the NYPD, and are sued in their individual capacities.

11. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

12. Within 90 days of the incident, plaintiff filed written Notice of Claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of that notice, and this matter has not been settled or otherwise disposed of.

## FACTUAL ALLEGATIONS

13. Plaintiffs Nicholas Adenekan and Joelyn Alves are United States citizens.

14. Up to and until June 18, 2020 plaintiff Nicholas Adenekan and his mother Joelyn Alves resided in Staten Island, New York.

15. On June 18, 2020 at approximately 11:30pm in the confines of the 122nd precinct of the New York City Police Department and more specifically, in the Great Kills neighborhood of Staten Island, Nicholas Adenekan, a 22 year old college student parked his vehicle, a 2016 Black Mercedes at the corner of Greaves Avenue and Jumel Street, when attempting to assist friends in locating a missing friend

16. Upon returning to his vehicle, police officers from the 122nd Precinct, specifically a female officer, whose name Plaintiffs learned to be Detective Sanfilippo aka Detective Louise Sanfilippo almost 24 hours after the initial incident, and other members of her precinct hereby named as John Does 1-5, as yet unknown, surrounded the legally parked vehicle and stopped Nicholas Adenekan from entering or accessing his car.

17. Said detention was guised by a false claim that the vehicle was under active criminal investigation and that Nicholas was not the registered owner.

18. Despite making said claims, Detective Sanfilippo failed to follow standard protocol and ask for identification, registration or paperwork reflecting that Nicholas had rightful access to the car.

19. Detective Sanfilippo and her colleagues failed to heed Nicholas Adenekan's pleas at explanation that the car belonged to him and his mother and that he was not involved in any criminal activity.

20. The night turned into early morning hours of June 19, 2020 and Det. Sanfilippo falsely represented that she was doing an investigation regarding "drugs, a stabbing and BIG guns".

21. Despite having spoken to Nicholas' mother, Plaintiff Joelyn Alves who is the registered owner Det Sanfilippo continued to profile Nicholas, a young black male with a Mercedes, and falsely represented that she was towing all the cars on the entire street because of the "investigation."

22. Despite the arrival of Plaintiff and registered owner Joelyn Alves, Nicholas' mother, Det Sanfilippo insisted that she was going to tow the vehicle and was in the middle of an investigation yet refused to provide any information and failed to actually investigate.

23. Det. Sanfilippo adamantly refused to provide Plaintiffs with an opportunity to speak with a Captain or Sergeant and informed Plaintiffs "I already told them what kind of car it is and they tow cars every day for a living."

24. Detective Sanfilippo refused to provide her credentials and was not wearing a badge which would be readily discernable. It took 24 hours before Plaintiffs learned of Detective Sanfilippo's name.

25. Detective Sanfilippo refused to provide a voucher for the taking of the vehicle.

26. Detective Sanfilippo refused to treat Plaintiffs with respect and failed to behave as a public servant.

27. Finding no relief from Detective Sanfilippo, Plaintiff Alves contacted the 122nd Precinct and spoke with night desk Sergeant Whitley who informed her that he was not aware of what was taking place and did not know of any pending investigation or an investigation involving her vehicle.

28. Plaintiff Alves was present when Sergeant Whitley spoke with Det Sanfilippo and Det Sanfilippo was heard stating "I'm not giving her any more information than you can."

29. Det Sanfilippo failed to communicate further and failed to provide any information.

30. Sgt Whitley refused to be present at the scene and refused to intervene in the misappropriation and theft of Plaintiffs vehicle.

31. Sgt. Whitley refused to inquire further and/or assist Plaintiffs all while repeatedly stating he was not going to get involved.

32. Det Sanfilippo insisted on towing the vehicle, failed to provide a voucher for the towed vehicle, in essence stealing and misappropriating Plaintiff's vehicle without cause and justification under the guise of a false, made up, concocted "investigation."

33. During the course of the above incident, and the many phone calls and visits made by Plaintiff Alves to the 122nd precinct, it took an entire day to determine the identity of Det Sanfilippo. .

34. Detective Howard of the precinct when questioned as to why the vehicle was towed could not provide an answer. He insisted he had no knowledge of an investigation involving guns and drugs and stabbing. His response was "who got stabbed?"

35. Plaintiffs calls to Internal Affairs Bureau provided no relief. To date Plaintiff has received no response or updates from the Internal Affairs Bureau.

36. It took an inordinate amount of time for Plaintiff to gain access to her car, and to the date of the filing of this notice of claim, no voucher has ever been provided.

37. Plaintiffs do now know why their vehicle was towed and never received documents evidencing same. No officer, detective, captain, sergeant at the 122nd precinct could

assist the Plaintiffs to determine what was happening to their vehicle and why

38. The taking of Plaintiffs vehicle was made without probable cause, or reasonable suspicion that a crime had taken place or that the vehicle was involved in a crime.

39. At all times during the events described above, the defendants were engaged in racial profiling, intentional targeting of a young black male with a 2016 Mercedes Benz under the false pretenses of "investigating a crime" when in fact no such crime was being investigated.

40. Detective Sanfilippo's misconduct was supported by her fellow colleagues in that not only did they not stop her from engaging in such nefarious behaviour but they supported and participated in same by allowing the vehicle to be towed and placed on the police yard. Det Sanfilippo and her fellow colleagues and officers jointly and severally violated Plaintiffs' rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

41. During all of the events above described, defendants acted maliciously, under the color of law, and with intent to injure plaintiffs

DAMAGES

42. As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

   a. Violation of their rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure of their person;

   b. Violation of their right to Due Process of Law under the Fourteenth Amendments to the United Stated Constitution;

   c. Violation of their New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

   d. Violation of their New York State Constitutional rights under Article 1, Section 6 to due process;

   e. Physical pain and suffering;

   f. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

## FIRST CAUSE OF ACTION

## (42 USC § 1983)

43. The preceding paragraphs are here incorporated by reference.

44. Defendants have deprived plaintiffs of their civil, constitutional and statutory rights under color of law and have conspired to deprive them of such rights and are liable to plaintiff under 42 USC § 1983.

45. Defendants' conduct deprived plaintiffs of their right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution. Defendants' conduct also deprived plaintiffs of their right to due process of law, pursuant to the Fourteenth Amendment of the United States Constitution.

46. Defendants falsely seized, in fact stole Plaintiffs vehicle by use of their status, stature and standing in the community as Officers of the Law, and failed to intervene in each other's obviously illegal actions.

47. Plaintiff has been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION

## (MUNICIPAL AND SUPERVISORY LIABILITY)

48. The above paragraphs are here incorporated by reference.

49. The City is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event. The City has been alerted to the regular use of excessive force, misuse of their badges by its police officers, but has nevertheless exhibited deliberate indifference to such behaviours; that deliberate indifference caused the violation of plaintiffs' constitutional rights in this case.

50. The aforesaid event was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

51. For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the

fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

52. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer.

53. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions.

54. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs civil rights, without fear of reprisal.

55. Plaintiffs have been damaged as a result of the deliberate indifference of the City to the constitutional rights of the City's inhabitants.

56. The City is liable for the damages suffered by plaintiffs as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiffs' constitutional rights, they failed to remedy the wrong; that Sgt Whitley despite becoming aware of the actions of Det Sanfilippo failed to put a stop to the illegal actions of the Detective thereby condoning, accepting and furthering the illegal behaviour; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event. The City has been alerted to the regular use of excessive force by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force; that deliberate indifference caused the violation of plaintiffs' constitutional rights in this case.

## THIRD CAUSE OF ACTION

## (CONSPIRACY)

57. The above paragraphs are here incorporated by reference.

58. Defendants agreed to violate the plaintiffs' rights in the manner described above. Further defendants made an agreement to attempt to cover up the behaviour and illegal theft of Plaintiffs vehicle

59. Defendants took action in furtherance of this agreement by allowing for Plaintiffs vehicle to be confiscated, towed and placed on the police yard thereby depriving Plaintiffs of their property all without cause justification or reason.

60. Plaintiff was injured as a result of defendants' conspiracy.

## FOURTH CAUSE OF ACTION

## (CONSTITUTIONAL TORT)

61. The above paragraphs are here incorporated by reference. 62. Defendants, acting under color of law, violated plaintiff's rights pursuant to §§ 5, 6 and 12 of the New York State Constitution.

62. A damages remedy here is necessary to effectuate the purposes of §§ 5, 6 and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiff's rights under those sections.

## FIFTH CAUSE OF ACTION

## (NEGLIGENT HIRING & RETENTION)

63. The above paragraphs are here incorporated by reference.

64. Defendant City, through the NYPD, owed a duty of care to plaintiff to prevent the loss of property and mental abuse, embarrassment, anguish and fear sustained by plaintiffs.

65. Defendant City, through the NYPD, owed a duty of care to plaintiffs because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated an injury to plaintiff or those in a position similar to plaintiff's as a result of this conduct.

66. Upon information and belief, defendant officers were incompetent and unfit for their positions and misused their positions of power to racially target and profile Plaintiffs and specifically a young African American male Plaintiff Adenekan; further defendants used their power to allow for and justify the the illegal taking of Plaintiffs vehicle.

67. Upon information and belief, defendant City knew or should have known through exercise of reasonable diligence that the officer defendants were potentially dangerous

and had previously falsely targeted, racially profiled and racially violated civilians without probable cause.

68. Defendant City's negligence in hiring and retaining the officer defendants proximately caused plaintiffs injuries.

69. Because of the defendant City's negligent hiring and retention of defendant officers, plaintiff incurred damages described above.

## SIXTH CAUSE OF ACTION

### (RESPONDEAT SUPERIOR)

70. The above paragraphs are here incorporated by reference.

71. Defendants' intentional tortious acts were undertaken within the scope of their employment by defendant City of New York and in furtherance of the defendant City of New York's interest.

72. As a result of defendants' tortious conduct in the course of their employment and in furtherance of the business of defendant City of New York, Plaintiff was damaged.

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiffs in an amount to be determined by a jury for each of plaintiff's causes of action;

B. Awarding plaintiffs punitive damages in an amount to be determined by a jury;

C. Awarding plaintiffs reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.


DATED: Brooklyn, New York
September 14, 2021

*Rita Dave*

_____
DAVE LAW PC
By: Rita Dave Esq.

TO: New York City Corporation Counsel Office
100 Church Street, 4th floor
New York, NY 10007

Det Louise Sanfilippo